**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CHIEF JUDGE LEWIS T. BABCOCK**

Civil Case No. 05-cv-02185-LTB-MJW

RMES COMMUNICATIONS, INC., a Colorado Corporation,

    Plaintiff,

v.

QWEST BUSINESS GOVERNMENT SERVICES, INC., a Colorado corporation,
PREMISYS SUPPORT GROUP, INC., a Colorado corporation,
OLIVER P. SALAZAR, an individual, in his personal capacity,
PAUL JOHNSON, an individual, in his personal capacity,
SHARON SEVY, an individual, in her personal capacity, and
STEVE KELLER, an individual, in his personal capacity,

    Defendants.
_____

**Order**
_____

Defendant Paul Johnson ("Johnson") moves to amend this Court's Amended Order of May 2, 2006 to Compel Arbitration ("May 2006 Order") to add himself as a party to the arbitration between plaintiff RMES Communications, Inc., ("RMES") and defendants Qwest Business Government Services, Inc., ("Qwest"), Sharon Sevy ("Sevy") and Steve Keller ("Keller.") For the reasons discussed below, Johnson's motion is GRANTED.

**I.   BACKGROUND**

The underlying dispute in this case involves claims by RMES against all defendants for violations of constitutional rights, federal anti-discrimination laws, and contract and tort claims. Qwest was the primary contractor providing telecommunications services at Denver International Airport ("DIA") for the City and County of Denver. RMES was a subcontractor to Qwest, as was defendant Premisys Support Group, Inc., ("Premisys.") RMES, a minority-owned business,

alleges that all defendants colluded to undermine RMES's contracts and business at DIA.

The May 2006 Order addressed a motion by Qwest, Sevy and Keller ("the Qwest defendants") to compel arbitration. That motion argued that all of the parties should be compelled to arbitrate. The Qwest defendants contended that they were required to arbitrate under the arbitration agreement contained in the subcontract between Qwest and RMES, while the claims against the remaining defendants should be arbitrated under other legal theories. In the alternative, the Qwest defendant argued that these claims should be stayed pending the outcome of the arbitration. The non-Qwest defendants responded that they opposed being compelled to arbitrate, but agreed that the claims against them should be stayed pending arbitration. Johnson filed a motion to join the Qwest defendants' original motion to stay, and to join the Qwest defendants' reply to RMES's response to this motion.

The May 2006 Order concluded that arbitration was appropriate for the Qwest defendants, but not for the non-Qwest defendants, and that claims against the non-Qwest defendants should be stayed pending the outcome of arbitration between RMES and the Qwest defendants. The Order placed Johnson among the non-Qwest defendants, and so not part of the arbitration. Johnson now moves to join the arbitration. RMES opposes this motion.

## II.  DISCUSSION

Numerous ambiguities hinder a clear resolution of this issue. First, Johnson's precise role in this case remains unclear. RMES alleged in its complaint that Johnson was an employee of Premisys. Johnson, while never filing an Answer to the Complaint that might address this allegation, states in this motion that he was an employee for another subcontractor on the DIA project. RMES, in emails dated May 15, 2006 and June 1, 2006 attempted to elicit from Johnson

his precise employment history. Johnson declined to provide this information, stating only that he had at one point believed that he worked directly for Qwest, but now realizes that he in fact worked for another subcontractor. Johnson's precise status in the DIA contracts at the root of this case remains unclear.

Second, it is not clear whether this motion represents an effort to correct a mistake or a change of position by Johnson. The Reply brief of the Qwest defendants (which Johnson joined) specifically places Johnson with the defendants against whom claims should be stayed pending arbitration and not among the defendants seeking arbitration. (See Reply Brief, Docket 38, pages 11, 13.) While Johnson refers to this inclusion as "inadvertent," the record does not contain any such statement from the Qwest defendants, the parties who filed the brief.

The record before me at this time is thus unclear on the precise relationship between Johnson and the Qwest defendants, whether Johnson initially did not want to be part of the arbitration and changed his mind, or whether there was an error by counsel (the same for the Qwest defendants and for Johnson), and Johnson's specific connections to the web of transactions at issue in this case. Nevertheless, I will analyze Johnson's motion on its merits, in light of the facts alleged in the complaint.

As explained more fully in the May 2006 Order, the basis of the arbitration between RMES and the Qwest defendants is the arbitration clause contained in the subcontract between RMES and Qwest. It appears beyond dispute that Johnson, whomever employed him, was not a signatory to this subcontract and is thus not bound by the arbitration clause. However, under theories of equitable estoppel, a non-signatory to an arbitration clause may join an arbitration if the signatory's claims against that party are "based on the same factual allegations" or "even the

3

same contract" as the claims against the signatories. *Roe v. Gray,* 165 F. Supp.2d 1164, 1175 (D. Colo. 2001). Compelling arbitration of claims against a non-signatory is appropriate when "the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *MS Dealer Serv. Corp., v. Franklin,* 177 F.3d 942, 947 (11th Cir. 1999). *See also GATX Mgmt. Serv., LLC v. Weakland,* 171 F. Supp.2d 1159, 1166 (D. Colo. 2001).

Here, RMES makes five claims against Johnson: violations of 42 U.S.C. § 1981 (Claim 2), deprivation of a property interest without due process of law (Claim 3), race discrimination (Claim 4), conspiracy to deprive RMES of civil rights in violation of 42 U.S.C. § 1985 (Claim 5) and tortious interference with contract (Claim 12). The first four claims are against all defendants; the fifth is against Johnson, PSG and Salazar.

All of these claims involve the same essential factual allegations: that Qwest and its agents working with Premisys and its agents undermined RMES's contracts and work at DIA and in the process violated RMES's constitutional, statutory and common law rights. The complaint is sparse as to specific allegations against Johnson. The Complaint states that Johnson "acted as Project Manager for Qwest" and was "primarily responsible for coordinating work under the Master Agreement, including the assessment and making of bids for non-routine work and materials. . .." (Compl. ¶ 11). The Complaint also alleges that Sevy, Johnson, Salazar and Keller "[E]ngage[d] in cronyism with respect to their discriminatory conduct towards RMES" and "[a]cted in concert with each other in the course of actions complained of herein." (Compl. ¶ 12).

Instead, the Complaint groups Johnson with the other defendants in broad claims of

misconduct. Claim 2 states that the defendants jointly are "liable to RMES under 42 U.S.C. § 1981 for direct and consequential damages." (Compl. ¶ 68 ). Claim 3 states that the defendants acted "in concert each with each other." (Compl.¶ 73). Claim 4 alleges that the acts alleged in claims 1, 2 and 3 also constitute race discrimination. (Compl. ¶ 76). Claim 5 alleges a conspiracy by all of the defendants. (Compl. ¶ 79, 80). Claim 12 alleges that Johnson intentionally caused Qwest not to renew its subcontract with RMES. (Compl. ¶ 114).

These claims against Johnson are "substantially interdependent" with the claims against Qwest, and allege "concerted misconduct" between Johnson and the Qwest defendants. The allegations rely on the same facts, make the largely the same claims and are thus "inherently inseparable." *GATX Mgmt. Serv.,* 171 F. Supp. 2d at 1167. Significantly, RMES does not contest that the claims are intertwined. Rather, RMES argues that allowing Johnson to join the arbitration is appropriate only if failure to join Johnson as a party would thwart the federal policy in favor of arbitration. This is not the applicable standard, and I do not apply it here.

Johnson has met his burden to show that the claims against him are intertwined with those of the signatory parties. It is therefore appropriate to allow him to join the arbitration.

It is So Ordered that:

Defendant Paul Johnson's Motion (Docket # 49) to Amend the Order Compelling Arbitration is GRANTED.

**DONE and ORDERED,** this ___27th___ day of July, 2006 at Denver, Colorado.

                                                                      s/Lewis T. Babcock
                                                    United States District Chief Judge